Good morning, Your Honor. William Broberg on behalf of Mr. Romero. Thank you very much for hearing me on his behalf today. I want to apologize. I am going to have to squeak through this oral argument. My voice kind of went away a couple of days ago. So I will try my best. I was hoping very much to address one matter that I think is over a lot of this case. The government has asserted to this court in many places that Mr. Romero did not make a motion to dismiss the indictment in the district court. That is simply, and again yesterday, in a 28-J letter, they make the assertion yet again. And you say there was at some early point a motion to dismiss? Oh yes, there was. That would be in the clerk's record at document number 90. Counsel, are you referring to the October motion to dismiss that was pro se? Absolutely. And also, it seems it was resubmitted again after the competency determination on April 1st, 2014. That is at docket number 132. I guess one of my questions about that is that Mr. Romero was represented by counsel and this was a pro se filing. And ordinarily, our court follows this practice and most courts do, that when someone is represented by counsel, pro se filings are received but not filed or they are simply not acted upon because the person is represented. And particularly in light of the fact that, at least at the time of the first filing in October, it appears that that was covered by a period when your client had been found to be incompetent. So what effect should that set of circumstances have in our analysis? Judge Graber, at the October, the filing of that motion, there was no finding of incompetence yet. But was he represented? He was represented. Yes, and his counsel had in May suggested that he was incompetent and then there was a hearing shortly after the time when he filed that. So I guess what I was meaning to suggest is that it appears that the period of time was one that would have been covered by the finding. Not that it had been made, you're correct. So there really are two factors here. One, he appears to have been incompetent or potentially so at that time, but more significantly, he was represented. So what do we do about that? Well, I think it's what this court has done in cases like this. As both the government cites in their brief and I cite in my brief, it's the Hall case. This is very similar to the Hall case where a person was represented by counsel in asserted speedy trial and wanted their counsel to do things and filed a pro se motion that this court credited, even though they weren't represented for counsel, they credited in terms of whether it was waived, whether having to make the motion to dismiss the indictment, whether that waived it in front of this court. It seems quite precisely. In Hall, as here, there was a pro se motion to dismiss by a represented client. And the court also said, because this was the objection that I think was being raised in the 20HA letter, that that continued forward even though it would have to pertain to different time periods at that point. Now, here, the motion to dismiss, was it ruled upon? No, which makes it exactly like the Hall case, because the Hall case, in my reading, had two holdings. I'm sorry about my voice. Had two holdings. One, that for purposes of, I believe it's 3162A, I believe, for purposes of that, in terms of waiver, the filing of the motion by the pro se client took it out of the waiver category. That's the first holding in Hall, even though he was represented. The second holding is because the court did not act upon that, that it continued forward and included all time periods up to the trial. The government, I think, responds or argues or tries to distinguish Hall in this case by saying that in those cases in Hall, and I think, Lloyd, that the counsel's motivation was different. And should we consider that? I mean, it was not, the counsel motivation was counter the interest, maybe, of the defendant. And here, there's no evidence of that. Should we consider that as a possible way to distinguish? I certainly think, you know, whenever any client and any attorney have a conflict about the way to proceed, and that would certainly be true in Hall, as it would be true here. And so I think they're very, very similar cases, Your Honor. But I do think that the apparent conflict that the Hall court is referring to, and also, to some extent, another case that the government cited, the Lloyd case, that's the kind of conflict, I think, that we're at. You know, I think that this is how we should proceed. I think this is how we should proceed. I'm not sure you answered my question because here, is there any evidence that the counsel who was representing him, the attorney, had counter interests or motivations other than the best interest of the defendant? Well, not making a motion to dismiss. I mean, it seems that this attorney just didn't want to dive into that. I'm not saying the attorney was negligent. I'm not saying the attorney was ineffective. I'm just saying that there appeared to be a difference in strategy. Let's assume you get beyond the waiver. What's your best argument with respect to the actual merits here? Well, here, I think that we've offered a construction of 3161H and its various subsections that takes into account Mr. Romero's interest in a speedy trial. We are responding to the government's order that was prepared by them on their pleading paper and signed by the district court. Essentially, the district court made findings that 3161H1A excluded large periods of time that we largely do not have a problem with. The main problem that we have is a problem from the time in which Mr. Romero was declared incompetent by the court when that finding was entered on March 19th to a time period when he was finally transported to the Federal Medical Center in Springfield, Missouri. Your first argument, as I understand it, is that A doesn't apply because that proceeding had been completed. Exactly. Okay. Go ahead. But there are two other possibilities. Right. The 4 and 7A, and the district court relied on 7A, not on 4, but the government's saying it could have relied on 4. The government's saying they could have relied on 4. It is interesting to me that even if the government could have, I think a more specific provision is the transportation provision. Let me start with one question. Does the fact that the district court didn't rely on 4 mean that we don't look at 4 or we do look at 4? Well, I certainly think that you can affirm things on other grounds. The question is whether in- Is that right or does the district court have to invoke it? I'm sorry? Is that right or does the district court have to invoke it? I don't know the answer to that. In this particular context. In general, I know you can affirm it. Yes, absolutely. In this particular context, what I think is the district court did not think that that was the reason. We know that from its order or else they would have put an H4. But for a cause sense, it was the reason, right? Because it was mentally incompetent until he was fixed, and so at the time that this was all going on, he was mentally incompetent and couldn't be tried. Then the question is what next? What next is you can then transport him, you can then take him to a hospital and see if you can fix him. But at that point, he was non-triable. For that whole period that he was not transported and not in the hospital, he was mentally incompetent and couldn't be tried. Well, that's H4. Right. So do you agree that H4 was a reason? Well, I agree that another way to read this statute is to apply the I'll let you make that argument, but do you agree or dispute that H4 applies here, that Romero was transported to Springfield because of the fact that he was mentally incompetent? Well, he was going to get transported to Springfield or to some other facility, to a hospital. It's a yes or no. Do I agree? Yes, in the but for sense. Okay. So for what applied. So do we say no? I mean, and I'm trying to figure out what you're asking for. Okay, sure. Do you want a dismissal of the indictment because the district court judge didn't check the right provision or the right box? Well, no. What we're saying is the H4 provision, which it did not invoke in its order, is the reason why the attorney general has authority to transport them. But when the attorney general doesn't transport them, it seems a more specific provision. It's essentially district court law. I'm sorry? I mean, nicely written district court opinions going both ways on this. Yes. Exactly. I have seen some of them. They're out of the circuit. And that's it. I think the rule in the construction that we're urging is a better rule. But why wouldn't we apply the same analysis that the Supreme Court applied in Tinklenburg and say that it was automatic? I want to understand why we wouldn't follow that analysis. Well, Tinklenburg is talking about 3161HA through H1A through, and they talk about those as automatic exclusions. These are other sections of the statute that don't necessarily have to be automatic exclusions. And I bet you're going to say, but the language is the same. It's very similar. Yes, it is very similar. So why wouldn't we apply it? Well, it's a different section, and I actually think our construction makes more sense. Why? Because the analysis or the reason for why they decided to do it automatic, I think, would apply here. I mean, why do we have to make a casual determination every time? I mean, the district courts are flooded with work and having to make these kind of determinations for every time. I don't know. It seems like the analysis in Tinklenburg, especially based on the language, would apply. Well, what I would say to that is having a district court and incentivizing the parties to come say we're in this transportation, where is this person in the pipeline is actually desirable and that delays in this time commitment. I understand that. Suppose they just never sent him off to be rehabilitated. He was just sitting there. We might have other problems, but wouldn't 4 apply at that point? I'm sorry? But wouldn't 4 apply at that point? Suppose there had just never been any arrangements to send him to the hospital to be restored. I mean, that would violate different statutes, I understand. But as to this, I assume that 4 would just apply. 4? The subsection 4. There would be a period of delay. The delay would result from the fact that the defendant is mentally incompetent because he couldn't be tried because he was mentally incompetent. Right, and that's what I'm saying. I'm sorry, what are you saying? Well, I believe that in this case it's the same thing. It applies in the same way. What I'm saying is it seems to me, even if you looked at a causation issue, that his mental incompetence was a cause, although transportation may have been another cause, of why he was not available to be tried at that point. Were he not incompetent, the whole thing would never have happened. Right? He wouldn't have had to be transported. He wouldn't have had to go to the hospital and so on. And he could have been tried at that just then, but he couldn't be tried then because he was incompetent, wherever he was, whatever was happening to him. So even if one gets more specific than a Tinklenburg kind of a look and say, did this peritif delay result from the fact that he was mentally incompetent, the correct answer is yes. No? Well, it is yes in a sense, but wasn't Your Honor's question, is what if he was never transported? Yes, what if he was never transported. So therefore, why is it different than if he was never transported? Well, if he was never transported, there does not seem to be a good way to get him transported. In the Speedy Trial Act, even though, pardon me, I see my time is running out. Go ahead, please. This is an interesting and important case. I'm sorry? It's an interesting and important issue. Go ahead. What I'm saying is I don't think, I think the construction we're urging, especially for a person who's been declared incompetent, you want them to be moved along. And you can read 3161HF in conjunction with 4241. They both talk about hospitalization. If we were only talking about pretrial proceedings before competence had been determined, if that's all that we were doing in 3161H1F, then hospitalization seems to be a surplus term to me. So you're saying that F is implicitly, although not explicitly, about these precise circumstances? Absolutely. Yes, Your Honor. Although it's not explicit. It could be other kinds of examinations for hospitalization. It could be, but there's an or there and not an and. And I have used all my time and then some. Okay. Go ahead. Thank you. May it please the Court. Teal Miller on behalf of the United States. There's an important distinction with Hall. There may be a factual distinction, but the question is there doesn't seem to be any distinction, or at least I don't see one, with regard to the actual holding of Hall. Because when you get to the holding of Hall, the whole page in which there's a discussion, it doesn't refer at all to what the exact circumstances were that led to the lawyer not making the claim. It's not just a factual distinction, Your Honor. It's a distinction as to what section of the Speedy Trial Act is at issue. In Hall, it was an ends of justice continuance that was at issue, and a district court is required to make findings in that circumstance under H7A. Under the other exceptions that are at issue here, H1A, H1F, H4. Well, that should make it less important how precise the claim was, not more important. Well, it makes it more important how precise the claim was because it has to be brought in front of the court because the court doesn't need to make a finding under H4. Exactly. So, therefore, it's less important that the precise claim be made. I mean, you're now telling us that we could affirm on a ground that was never presented to the court by you. Your Honor, I'm telling you that for two reasons. That's right. We never argued H4 below. Right. It would have been better if we had. So, therefore, why does it matter what he argued? There's a difference because there's a statutory waiver provision with respect to his motion to dismiss. I understand that. But you're trying to tell me that the reason we have to be tough about it and the reason it's different from Hall is because he had to bring it to the judge so the judge can rule it out, but you didn't bring it to the judge so the judge can rule it out. Either these things operate as a matter of law or they don't. I respectfully disagree, Your Honor, and if I could explain why. The 3162A2 says that the defendant bears the burden of proof and must make a motion to dismiss or the claim is waived. And Tinklenburg says that the provisions that don't have a reasonable requirement apply automatically. And the effect of those three statutory and legal principles together mean that when a defendant does not bring a specific contention before the court in a motion to dismiss, it's waived and mean that when there's an automatic provision that might apply because the defendant has the, as the Zedner case in the Supreme Court says, has the burden of spotting speedy trial issues, the failure to do so doesn't mean they can't apply because the government didn't raise them. So although there's sort of, it seems like both sides. I understand you'd be saying that the difference is that Hall was a different kind of a claim. What kind of a claim was it? Hall was an ends of justice continuance claim under H7. Okay. All right. So tell me, explain to me, first of all, this was two in the sense that that's what the judge relied on. Yes, but the motion to dismiss, the only motion to dismiss here, which was a pro se motion to dismiss for the reasons Judge Graber suggested, we don't think the court had an obligation to consider, but I'll turn to that in a minute. But even if you assume that the only motion to dismiss in this case applied, he was complaining about ends of justice continuances that were granted in February and May of 2013, long before the relevant period here. He never raised an argument that there was a speedy trial violation under H1F. And that's the provision he's trying to bring before this court here, which is the relevance of the case I cited in my 28-J letter yesterday. I mean, in addition to everything else, the district court did rule on the speeding trial act issues. Yes, the district court did. It seems like an extremely weak instance in which to be persnickety about exactly how these issues were raised in the face of Hall when the district court rode directly on them. Well, Your Honor, but the district court did not consider the relevant period on the arguments that Mr. Romero is now making. What the district court said was, I found him to be incompetent on March 19, 2014, and that incompetency continued until this hearing today. Well, no, that's actually not what she said. She didn't rely on H4. She relied on, as I understand it, she didn't do that at all. And I want to know what's the reason. She relied on H1A about competency proceedings. Correct, which was certainly over by that time, right? The competency proceedings ended on March 19. All right. I agree. And then she relied on H7. That's right, Your Honor. So she didn't rely on H4. That's right, Your Honor. We have not suggested that she relied on H4. What we've suggested is that he cannot establish prejudice because he never argued that there was a violation of the provision he's now saying was violated, which is H17. Transportation provision. Yes. So we didn't argue H4. He didn't argue H17. All right. So you're both in the same spot, essentially. That's right, except for that he has the burden of going forward. He has the burden of showing evidence that the Disputee Trial Act has been violated. And because he has that burden, the reason the waiver should have happened here, in your view, in light of what you know now, how should this work? Because you gave the judge the order. That's right. What should have happened is what the District Court, sort of the first stage that the District Court took, which is every time Mr. Romero, in the relevant period, which is subsequent to March 19, 2014, every time Mr. Romero raised the Disputee Trial Act issue, the court referred it to his counsel and said, if you believe there's a violation here, bring a motion. And when they didn't, the District Court relied on that. And the District Court, it is within a District Court's discretion to treat a defendant who is represented by counsel to always also allow him to bring motions. It's also within the District Court's discretion not to do so. And when the District Court said to counsel, bring a motion, if you believe you had one, that's what the District Court was doing. She was exercising her discretion and saying, if your counsel thinks you have such a motion, I'll hear from them. And that made sense in this context because he'd been declared incompetent and his right to represent himself had been cut off explicitly. And so let's assume, though, that she could consider that motion that he had filed originally because it was never ruled on her that that gives him the ability to argue now. Or let's say the lawyer had filed it on his behalf. Okay. What should the District Court have done, in your view? What the District Court should have done is looked at the motion and the content of the motion was that the two continuances that have already happened were unwarranted under the Speedy Trial Act. Well, the District Court had already held that they were warranted. The District Court made the H-7 findings in ruling on her. But the H-7 findings, do you think that was the best basis for her? I'm asking you right now. What should have ideally happened here? Your Honor, I'm answering what the District Court should have done when it received this motion, which was long before December of 2014, which is when the District Court made the ultimate ruling. So when the District Court received this motion, which is dated October 15, 2013, what she should have said is he's represented by counsel and I have already made a finding under H-7 that the continuance in February of 2013 and the continuance in May of 2013, which is what he appears to be challenging in this motion, were warranted under H-7. And then he never renewed the motion and the events occurred long afterwards. I recognize that Hall says the motion was continuing, but that motion was about the same subject. Here, what he's trying to challenge is a different subject. He's trying to challenge a delay he says was unreasonable under a transportation delay, which he says was unreasonable under H-1F. Do you want to address the merits of the question and the alternative? I'd be happy to, Your Honor. As we have said in our brief, H-4 applies, and it applies because the period of incompetency began with the District Court's order on March 19, 2014, and the statutory provision is clear. It says any period of delay resulting from incompetency, and that's precisely what is at issue here. If the defendant had made this motion, had made a motion that articulated the argument he's making now, what the District Court should have done would have been to cite H-4 and say you're incompetent, you can't be tried. This is a situation in which the defendant had a constitutional right not to be tried while he was incompetent and a statutory right to a speedy trial, and the statutory right gave way under H-4. The statutory right actually has a carve-out, an exclusion for periods of incompetency recognizing that an incompetent defendant cannot be tried. What about the defense argument that the more specific provision has to be transported within 10 days of H-whatever? Well, this is another reason why I think the waiver principle is important here. He never brought this motion, so there is no development in the record here with regard to why it took from March 19, 2014 to June 19, 2014. But your proper reason is there weren't bids, and the case law, which has looked at exactly that question, I mean, it's interesting that this seems to come up relatively often because it appears that relatively often there aren't bids, and at least several District Courts have concluded that that's, you know, never mind the transportation provision is the one that applies and no bids isn't the reason. Well, Your Honor, there are also some Court of Appeals decisions dealing with the interplay between H-1A and H-1F when a defendant is being transported for evaluation. I'm not aware of any Court of Appeals decisions about the interplay between H-4 and H-1F, but H-4 is a standalone provision, and I don't think it's correct to say the transportation provision is more specific. They're both specific, and it is clear under this Court's precedence and the Supreme Court's precedence that there are times when more than one provision applies or there's an argument that more than one provision applies. But the question is the bulk of the periods that the transportation provision would apply would be about transportation with regard to competence, either pre-competence determinations or post-competence restoration. It's hard to figure out when else it would apply. I'm not sure I understand the question. If the court is asking whether the 91-day period between March 19th and June 19th was mostly transportation... What I'm asking is if we read H-4 as trumping it, we would also presumably read the other provision about competency. I don't think you have to. I actually think that because they're in the same subsection, they both have to do with proceedings, and some courts have said there's no proceedings ongoing if all that's happening is that you're waiting for transportation. But H-4 isn't a subsection about proceedings. It's about a period of incompetency. And so there is a distinction to be drawn between H-1A and its relationship to H-7 and H-4. But wouldn't it render the transportation superfluous? I mean, why have that one? It wouldn't, Your Honor, because there are... The Taylor decision from this court is an example of an application of the transportation provision when someone's being moved from one district to another. And as your question earlier suggested, sometimes certain defendants are moved for an examination that doesn't have to do with competency. But the competency provisions... So it's not superfluous, and it's not more specific. It's specific, but so is H-4, which has to do with this problem of a defendant who has... Well, there's another potential application of H-1A because a delay resulting from a mental competency evaluation might, in fact, end in a finding of competency. So H-4 would never come into play. So they seem to be about two different things. Well, that's right. I'm reading it. H-1A is about competency proceedings, which, as you're right, can result in a finding of non-competency or can be very quick. It can take a very short period of time. Whereas under 4241D, which is the provision of 18 U.S.C. 4241D, which regards competency proceedings, it's mandatory that the defendant who has been found incompetent is transferred to the custody of the attorney general and then goes through restoration proceedings. Now, those can be relatively short if it's quickly determined that the defendant can't be restored to competency, but it isn't the same as the proceedings under H-1A where it might result in a finding of non-competency. If your honors have no further questions, I just want to emphasize that under... The waiver provision is there for a reason, and it's that when the record isn't developed, we don't really know what happened in this case. You're right that we posited bed space as a reason because we've looked at the cases and we are familiar with the Bureau of Prisons difficulties. We could fix that by remanding on it. Well, that's true, Your Honor, but giving the defendant another opportunity to argue something when he didn't make this motion and certainly didn't raise this specific issue is contrary to the... But it's also true that the district court didn't invoke the provision that you're now relying on. So it seems to me that the district court's ruling, to my mind, is wrong as to what she ruled on, i.e., she did rule, and what she ruled seems to me wrong, i.e., neither 1A nor 7A applies. Well, Your Honor, we haven't actually discussed whether 7A applies, and I... Well, 7A doesn't apply for the one reason because there wasn't as such a continuance granted. That's right, and... I mean, aside from everything else, there wasn't a continuance granted. Well, there had been continuances granted, and to the extent the motion he's depending on is a motion about objecting to ends of justice continuances, I do think the district court was ruling on his motion prior to trial. I also think that the district court was... Mr. Romero would have to show that there was some prejudice to him that the district court's order didn't cite H4, and he cannot do that, and for that reason a remand isn't warranted, and he can't do that because of Tinklenburg and the clear language of the statute. If there are no further questions, we ask that the judgment be affirmed. Mr. Miller, so what is it you are seeking? Is it a remand? It could be a remand if your honors believe that additional facts need to be had to get to the speedy trial. In our brief, we ask you to dismiss it, the indictment with prejudice. I'm sorry, I didn't hear you. If there are additional facts... I understand you're struggling,  I said in our brief, we ask you to dismiss it and we simply ask that the indictment be dismissed. You remand with instructions to dismiss... Well, that doesn't seem like a possibility because there is a reasonability determination under F and it hasn't been made, right? So you are here asking that in the alternative, a remand for findings on the reasonability? Yes, Your Honor. Thank you very much. Thank you very much. Okay, the case of the United States v. Romero is submitted, Judge Graber. Would you like another break or shall we go on?
judges: Graber, Berzon, Murguia